**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

                                        Case No. 08-33991

**WILLIAM FREDERICK WOLFF, JR.**
aka BILL WOLFF
**BARBARA LEE WOLFF**

                    Debtors

**MEMORANDUM ON
OBJECTION TO CLAIM**


**APPEARANCES:**    LITTLE & MILLIGAN, PLLC
                          F. Scott Milligan, Esq.
                          900 East Hill Avenue
                          Suite 130
                          Knoxville, Tennessee 37915
                          Attorneys for the Chapter 7 Trustee

                        FOWLER WHITE BOGGS P.A.
                          Keith T. Appleby, Esq.
                          Post Office Box 1438
                          Tampa, Florida 33601
                          Attorneys for Fowler White Boggs, P.A.


**RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE**

This contested matter is before the court on the Objection to Claims (Objection) filed by the Chapter 7 Trustee, G. Wayne Walls (Trustee), on May 12, 2010, objecting to the unsecured claim filed by the Tampa, Florida law firm of Fowler White Boggs, P.A. (Fowler White) on September 15, 2009, in the amount of $21,220.04 for "Services Rendered" to the Debtors. On June 24, 2010, Fowler White filed its Objection to Chapter 7 Trustee's Objection to Claim (Response) asking the court to overrule the Trustee's Objection and allow its claim. Pursuant to the agreement of the parties, all issues will be resolved on stipulations and briefs.

The record before the court consists of Stipulated Facts and Documents filed by the parties on August 9, 2010, as amended by the Amended Stipulated Facts and Documents filed on August 25, 2010 (collectively, Stipulations). Fowler White's Brief in Opposition to Trustee's Objection to Claim No. 28 was filed on September 30, 2010, the Trustee's Brief in Support of Objection to Claim of Fowler White Boggs, PA was filed on October 11, 2010, and Fowler White's Reply to Trustee's Brief in Support of Objection to Claim of Fowler White Boggs, PA was filed November 4, 2010.

This is a core proceeding. 28 U.S.C. § 157(b)(2)(B) (2006).

**I**

On January 23, 1984, the Debtors commenced a case under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, which was assigned case number 8:84-bk-00143-ALP (Florida Bankruptcy Case). STIPS. ¶ 4. They were represented by Fowler White in the Florida Bankruptcy Case until it was closed in 1987. STIPS. ¶ 26; *see also* STIP. EX. B. At the time the Florida Bankruptcy Case was filed, the Debtor,

2

William F. Wolff, his parents, and two siblings shared equally in the ownership of WFW Company, which had operated as B&P Express, and this ownership interest was listed as an asset in the Debtors' statements and schedules.[1]  STIPS. ¶¶ 1-2, 5.  The chapter 7 trustee in the Florida Bankruptcy Case abandoned any interest in the then defunct WFW Company and B&P Express, and the case was administered and closed on November 24, 1987.  STIPS. ¶¶ 6-7.  The Florida Bankruptcy Case was subsequently reopened on September 30, 2008, to determine the rights to funds in the amount of $182,206.50 derived from the demutualization of Principal Financial Group, a company which had, on March 1, 1982, issued a Group Annuity Contract to B&P Express, and which were being held by the Bureau of Unclaimed Property for the State of Pennsylvania (Annuity Funds).  STIPS. ¶¶ 3, 8-11; STIP. EX. A.  Thereafter, on October 3, 2008, the chapter 7 trustee in the Florida Bankruptcy Case filed a motion seeking a turnover of the Annuity Funds, which was granted by an order entered on November 4, 2008.  STIPS. ¶¶ 17-18; STIP. EX. E; STIP. EX. F.

The State of Pennsylvania turned over the Annuity Funds to the chapter 7 trustee in the Florida Bankruptcy Case, who filed Adversary Proceeding No. 09-00035 against William F. Wolff, B&P Express, the Western Pennsylvania Teamsters & Employers Pension Fund, and Central Pennsylvania Teamsters & Employer Pension Fund (Florida Adversary Proceeding) on January 26, 2009, seeking a declaratory judgment concerning the competing interests in the $182,206.50.  STIPS. ¶¶ 19-21; *see also* STIP. EX. G; STIP. EX. J.[2]  Although it had filed a Notice of Non-Representation

---

[1] The Debtor, William F. Wolff, and his brother, Richard Wolff, now have the sole ownership in B&P Express, as all other shareholders of WFW and B&P Express are deceased.  STIPS. ¶¶ 24-25.

[2] The two Teamsters Funds were named as defendants because they had asserted claims as creditors of B&P Express and were listed in the Debtors' Florida Bankruptcy Case with claims exceeding $4,000,000.00, as well as being listed as creditors in B&P Express's bankruptcy case filed in New York.  STIPS. ¶¶ 22-23.

3

in the Florida Bankruptcy Case on November 3, 2008, Fowler White filed an Answer on behalf of the Debtor, William F. Wolff, in the Florida Adversary Proceeding on February 24, 2009. STIPS. ¶¶ 27-28; STIP. EX. H; STIP. EX. I. In the course of the Florida Adversary Proceeding, Fowler White investigated the competing claims to the Annuity Funds and negotiated a settlement, which was approved by the Bankruptcy Court for the Middle District of Florida, Tampa Division, on June 9, 2010. STIPS. ¶ 29; *see also* STIP. EX. B; STIP. EX. K. Fowler White also negotiated a compromise between the chapter 7 trustee in the Florida Bankruptcy Case and the two Teamsters Funds, wherein the Teamsters Funds agreed to accept a 10% payment as settlement in full of their claims. STIPS. ¶¶ 30-31; *see also* STIP. EX. K - STIP. EX. M.

In the interim, the Debtors filed the Voluntary Petition commencing their Chapter 7 case before this court on September 11, 2008 (Tennessee Bankruptcy Case), scheduling, among other things, the possible claim valued at $182,206.50 against the State of Pennsylvania. STIPS. ¶¶ 12-13; STIP. EX. C. Upon information that this claim would be administered in the Florida Bankruptcy Case, the Trustee filed a Report of No Distribution on October 28, 2008, and the Tennessee Bankruptcy Case was closed as a no asset case on March 23, 2009. STIPS. ¶¶ 14-15. However, after being advised that a substantial portion of the funds realized from the claim against the State of Pennsylvania were to be administered in the Tennessee Bankruptcy Case, the Trustee filed a Motion to Reopen Case which was granted by Order entered June 8, 2009. STIPS. ¶ 16; COLL. STIP. EX. D.

Pursuant to the approved settlement and compromise negotiated in the Florida Adversary Proceeding, the following distributions were made from the $182,206.50 Annuity Funds: $2,700.00 trustee commission to the Florida Bankruptcy Case chapter 7 trustee; $10,651.20 to the Florida

Bankruptcy Case chapter 7 trustee's counsel; and $18,220.65 to be divided by the Western Pennsylvania Trustee's and Employers Pensions and Welfare Funds and Central States, Southeast, and Southwest Areas Pension Fund. STIPS. ¶ 35. The remaining balance of $152,106.68[3] was forwarded to the Trustee to be administered in the Tennessee Bankruptcy Case, and the Florida Adversary Proceeding was dismissed on June 10, 2009. STIPS. ¶ 36. Fowler White filed its claim number 28 seeking compensation for services rendered the Debtors in connection with the negotiated settlement of the Florida Adversary Proceeding in the amount of $20,604.50 and reimbursement of expenses in the amount of $615.54 on September 15, 2009, to which the Trustee filed an objection on May 12, 2010. STIPS. ¶¶ 37-38; STIP. EX. N; STIP. EX. O. While he agrees that Fowler White's services were beneficial in the Tennessee Bankruptcy Case, the Trustee objects to the claim "as said claim results from services rendered to the debtor post-petition, said attorneys were not disclosed or retained in the instant bankruptcy case, said attorneys were not retained by the Chapter 7 Trustee or the bankruptcy estate, and under the authority of *Lamie v. United States Trustee*, 540 U.S. 526 (2004), said attorneys are not entitled to be compensated from funds of the bankruptcy estate." STIP. EX. O at ¶ 1.

As set forth in the Scheduling Order entered on July 15, 2010, the issue to be resolved by the court is "whether the claim filed [by] Fowler White Boggs, P.A. is entitled to any priority over general unsecured claims; whether said claim, irrespective of classification, is allowable in any amount; and/or if said claim is allowable under any classification, in what amount[.]"

---

[3] Because the disbursements total $183,670.53 rather than the exact amount of the settlement proceeds, $182,206.50, the court presumes that the additional $1,472.03 represents interest earned on the settlement proceeds prior to their disbursement.

5

## II

"A proof of claim executed and filed in accordance with [the Bankruptcy Rules] shall constitute prima facie evidence of the validity and amount of the claim." FED. R. BANKR. P. 3001(f). Furthermore, "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a) (2006); *see also* FED. R. BANKR. P. 3007 (setting forth the procedure for objections to claims). The objecting party then bears the burden of "presenting evidence to rebut or cast doubt upon, the creditor's proof of claim . . . [and] produc[ing] evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency[,] . . . [at which point], the burden reverts to the claimant to provide the validity of the claim . . . by a preponderance of the evidence." *In re Cleveland*, 349 B.R. 522, 527 (Bankr. E.D. Tenn. 2006) (quoting *In re Giordano*, 234 B.R. 645, 650 (Bankr. E.D. Pa. 1999)).

The validity of a proof of claim stems from the status of a party as a creditor of the debtor. The Bankruptcy Code defines "creditor" as "[an] entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor[,]" 11 U.S.C. § 101(10)(A) (2006), and "claim" is defined as:

> (A) [the] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) [the] right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5) (2006). There is no dispute that substantially all of Fowler White's claim for services performed in its negotiation of the settlement in the Florida Adversary Proceeding arose subsequent to the filing of the Tennessee Bankruptcy Case.[4] *See* STIP. EX. N. Therefore, the claim may be allowed only if it can be classified as one of the statutorily compensable administrative expense claims.

Fowler White contends its claim is compensable as an administrative expense under 11 U.S.C. §§ 327(a) and 503(b) (2006) which, as material to this contested matter, provide that

> After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including –
>
> (1)(A) the actual, necessary costs and expenses of preserving the estate including –
>
> > (i) wages, salaries, and commissions for services rendered after the commencement of the case[.]
>
> . . . .
>
> (2) compensation and reimbursement awarded under section 330(a) of this title[.]

11 U.S.C. § 503(b). Parties seeking payment of administrative expenses under § 503(b) must prove that they are entitled to such priority treatment by a preponderance of the evidence, just as it is within the court's discretion whether to allow an administrative expense. *In re Courtney*, 359 B.R. 883, 886 (Bankr. E.D. Tenn. 2007). "Claims for administrative expenses under § 503(b) are strictly construed

---

[4] Of the 62.90 hours for which Fowler White seeks compensation, 3.90 hours ($546.00) are attributable to services performed on January 1, 2008, and February 25 and 26, 2008. The remaining hours, together with all expenses for which reimbursement is claimed, are attributable to services rendered after September 11, 2008, the date the Debtors commenced the Tennessee Bankruptcy Case. The nominal services rendered prior to the filing of the Tennessee Bankruptcy Case were, of course, rendered during the pendency of the Florida Bankruptcy Case.

because priority claims reduce the funds available for creditors and other claimants." *In re Federated Dep't Stores, Inc.*, 270 F.3d 994, 1000 (6th Cir. 2001).

Pursuant to § 327(a), trustees are authorized, with court approval, to "employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title[,]" 11 U.S.C. § 327(a) (2006). Section 330(a) allows "a trustee . . . or a professional person employed under section 327 or 1103" to be awarded "reasonable compensation for actual, necessary services rendered by the trustee . . ., professional person, or attorney and by any paraprofessional person employed by any such person; and reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1)(A), (B) (2006). Nevertheless, "[u]nless the applicant for compensation is in one of the named classes of persons in the first part, the kind of service rendered is irrelevant[. . . and a] debtor's attorney not engaged as provided by § 327 is simply not included within the class of persons eligible for compensation." *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004). "[Section] 330(a)(1) does not authorize compensation awards to debtors' attorneys from estate funds, unless they are employed as authorized by § 327. If the attorney is to be paid from estate funds under § 330(a)(1) in a chapter 7 case, he must be employed by the trustee and approved by the court." *Lamie*, 540 U.S. at 538-39.

It is undisputed that the Trustee did not employ Fowler White to represent him in either the Tennessee Bankruptcy Case, the Florida Bankruptcy Case, or the Florida Adversary Proceeding. Fowler White represented only the Debtor, William F. Wolff, and only in the Florida Adversary Proceeding, and it was in that representative capacity that Fowler White negotiated the compromise

and settlement with the Teamsters Funds. Therefore, under the directives of the Supreme Court in *Lamie*, Fowler White is not entitled to payment of its claim as an administrative expense under § 503(b)(2).

Fowler White also argues that it is entitled to its compensation as an actual, necessary cost of preserving the estate. In the Sixth Circuit, whether a claim should be treated as an administrative expense under § 503(b)(1)(A) is determined "by applying the well-accepted 'benefit to the estate' test, which states that a debt qualifies as an 'actual, necessary' administrative expense only if (1) it arose from a transaction with the bankruptcy estate and (2) directly and substantially benefitted the estate." *Pension Guar. Benefit Corp. v. Sunarhauserman, Inc. (In re Sunarhauserman, Inc.)*, 126 F.3d 811, 816 (6th Cir. 1997); *see also Nat'l Union Fire Ins. Co. v. VP Bldgs., Inc.*, 606 F.3d 835, 838 (6th Cir. 2010). As previously stated, the Trustee has stipulated that Fowler White's services were beneficial to the estate, therefore only the first prong – whether Fowler White's services arose from a transaction with the Debtors' estate – is in question.

Again, the record clearly establishes that Fowler White represented the Debtor, William F. Wolff, in the Florida Adversary Proceeding, and it was in that representative capacity that it negotiated the compromise and settlement that subsequently resulted in a substantial portion of the Annuity Funds being paid into the Debtors' estate in the Tennessee Bankruptcy Case. At no time did the Trustee in the Tennessee Bankruptcy Case employ Fowler White, nor did he authorize Fowler White to act in any way on his behalf.

> Pursuant to § 541(a) of the Bankruptcy Code, all legal or equitable interests the debtor has in property at the time the case is filed become[s] property of the estate. Property of the estate includes "causes of action." The right to pursue causes of

  action belonging to the debtor at the time the case is filed vest in the trustee for the
  benefit of the estate.

*In re Blurton*, 334 B.R. 602, 607 (Bankr. W.D. Tenn. 2005) (citations omitted). Applying this definition to the facts in the record, it is clear that Fowler White's transactions were with the Florida chapter 7 trustee and the co-defendants to the Florida Adversary Proceeding and were not with the Trustee in the Tennessee Bankruptcy Case. Furthermore, it was the Florida chapter 7 trustee who pursued and recovered the Annuity Funds which were then subject to the compromise and settlement, and it is the Florida Bankruptcy Case through which Fowler Boggs should have sought an administrative expense claim. While the Trustee and the Debtors' estate in the Tennessee Bankruptcy Case benefitted from Fowler White's services, those services were not sought after or authorized by the Trustee and are, therefore, not compensable as an actual and necessary cost or expense of preserving the Debtors' estate under § 503(b)(1)(A).

  Fowler White has also asked the court to exercise its inherent equitable powers to award the requested compensation and expenses, relying upon 11 U.S.C. § 105(a) which provides that:

  The court may issue any order, process, or judgment that is necessary or appropriate
  to carry out the provisions of this title. No provision of this title providing for the
  raising of an issue by a party in interest shall be construed to preclude the court from,
  sua sponte, taking any action or making any determination necessary or appropriate
  to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a) (2006). Section 105 provides bankruptcy courts with the ability and "power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." *Casse v. Key Bank Nat'l Ass'n (In re Casse)*, 198 F.3d 327, 336 (2d Cir. 1999) (citation omitted). It is not, however, without limits, as courts may utilize § 105(a) only in furtherance of the goals of the Bankruptcy Code. *Childress v. Middleton Arms, L.P. (In re Middleton Arms, L.P.)*, 934 F.2d 723,

725 (6th Cir. 1991). Section 105(a) does not "create a private cause of action unless it is invoked in connection with another section of the Bankruptcy Code" and may not be used to circumvent the Code. *In re Rose*, 314 B.R. 663, 681 n.11 (Bankr. E.D. Tenn. 2004) (citations omitted). "While the equitable powers emanating from § 105(a) are quite important in the general bankruptcy scheme, and while such powers may encourage courts to be innovative, and even original, these equitable powers are not a license for a court to disregard the clear language and meaning of the bankruptcy statutes and rules." *Official Comm. of Equity Sec. Holders v. Mabey*, 832 F.2d 299, 302 (4th Cir. 1987).

The court has discussed the reasons why Fowler White's claim does not fall within the scope of either § 503(b)(1)(A) or (b)(2). As such, it cannot exercise the equitable powers afforded by § 105(a) to undermine the plain language of § 503(b) and allow payment of Fowler White's claim in the absence of the required prerequisites. Accordingly, the Trustee's Objection to Claims will be sustained, and Claim no. 28 in the amount of $21,220.04 filed by Fowler White Boggs, P.A. on September 15, 2009, will be disallowed.

An order consistent with this Memorandum will be entered.

FILED: November 30, 2010

> BY THE COURT
>
> */s/ RICHARD STAIR, JR.*
>
> RICHARD STAIR, JR.
> UNITED STATES BANKRUPTCY JUDGE